KENTUCKY BAR ASSOCIATION, CLE COMMISSION, Movant,

v.

John Grant COOK, Respondent.

No. 2006–SC–0091–KB.

Supreme Court of Kentucky.

April 11, 2006.

John Grant Cook, Louisville, for Movant.

John D. Meyers, CLE Director, Kentucky Bar Association, Frankfort, for Respondent.

## OPINION AND ORDER

On January 9, 2006, this Court issued a Show Cause Order against John Grant Cook, KBA Number 90412, whose last known bar roster address is 1602 Bardstown Road, Louisville KY 40205, to show why he should not be suspended from the practice of law for failure to comply with the New Lawyer Skills Program requirements as set forth in SCR 3.652(9).

SCR 3.652(9) provides that suspension from the practice of law is warranted for failure to complete and certify attendance for the New Lawyer Skills Program pursuant to paragraphs (5) and (6). It allows for lesser sanctions where appropriate.

SCR 3.652(5) requires Kentucky State Bar Association members to complete the New Lawyer Skills Program within twelve (12) months following the date of their admission.

On October 25, 2005, the last program available before the expiration of the twelve-month period, was held in Covington, Kentucky. Cook registered for and attended the first day of this program. On the second day, however, he appeared late by about one or two hours.

Cook responds that he experienced unforeseen automobile trouble on the morning of October 26 when driving from Louisville to Covington for the program. The rest of his response is apologetic and acknowledges his duties to better prepare for these types of situations.

The record does not show that Cook applied for any type of extension.

In its reply to Cook's pleading, the CLE Commission moves the court to find that Cook has not shown cause why he should not be suspended from the practice of law or otherwise sanctioned pursuant to 3.652(9). In lieu of a suspension, the CLE Commission requests the Court order Cook to make up the portion of the program he missed at the New Lawyers Skills Program, scheduled for April 19–20, 2006 in Louisville; fine Cook $500 for his failure to attend; and, order that he will be ineligible and shall not apply for a non-hardship time extension pursuant to SCR 3.667(2) for the education years June 30, 2006 and June 30, 2007.

We find that Cook has not shown cause why he should not be suspended from the practice of law or otherwise sanctioned. However, we adopt the CLE Commission's recommendation for a fine in lieu of suspension, except that the fine shall be $300.00.

It is therefore ORDERED:

1. Cook shall pay a fine of $300.00 for non-compliance with the CLE requirements of SCR 3.652(5) for last year, to be paid to the Kentucky Bar Association within thirty (30) days of the date of this order, for which execution may issue upon expiration of said thirty (30) days;

2. He shall attend that portion of the New Lawyers Skills Program, scheduled on April 19–20, 2006 in Louisville, that he missed in October 2005; and

3. He shall not apply for nor shall he be eligible for a non-hardship extension of time pursuant to SCR 3.667(2) for the educational years June 30, 2006, and June 30, 2007.

All concur except LAMBERT, C.J., who files a separate dissenting opinion and is joined by GRAVES, J.

GRAVES, J. files a separate dissenting opinion and is joined by LAMBERT, C.J.

ENTERED: April 11, 2006.

/s/ Joseph E. Lambert
Chief Justice

LAMBERT, Dissenting Chief Justice.

I respectfully dissent from the majority opinion as I believe Respondent has shown cause for his tardiness and that the monetary sanction imposed is totally unwarranted. The CLE Commission, through the KBA, asks this Court to impose a $500 dollar fine on this new attorney for little more than bad luck. In his response to the show cause order, Respondent stated:

I attended the first full day of the program. Unfortunately, due to unforeseen car trouble while driving to Covington from Louisville, I was approximately 1 to 2 hours late for the second day of the program.

Though unintentional, I deeply regret this incident. I realize the importance of the program, and this action was not based on any lack of respect for the KBA and such programs.

Unintentional though it may have been, this incident brought to the light the fact that I should be more prepared for unexpected delays and problems. Indeed, I had one year to complete this program, and many of my fellow attorneys had made arrangements to stay close to Covington for the two days of the conference—I should have done the same.

I am honored to be an attorney in the state of Kentucky. I need to keep in mind, however, that such a position *demands* certain responsibilities. If there is a danger that such responsibilities cannot be met, I must plan accordingly by making "back-up" arrangements, or otherwise making arrangements that minimize the risk of failing to meet obligations.

Because my non-compliance was not intentional and was not rooted in disrespect for the KBA, I also pray for leniency on the part of this Honorable Court. I have strived to be an attorney that will do honor to the practice of law in Kentucky. I pray that this Honorable Court will offer me a second chance to get organized and arrange my affairs properly so as to avoid missteps such as this.

As always, I am available to discuss this issue in further detail with the KBA or the Kentucky Supreme Court as they see fit.

I offer a formal apology for this incident, and I Thank this Honorable Court for its time and consideration in this matter.

In my judgment, this unrefuted explanation and expression of mea culpa is sufficient and we should accept it as a proper showing of cause. Nothing in Respondent's behavior suggests a cavalier attitude and I wonder what point the CLE Commission and this Court are making by the disposition. I fear that a disposition such as this will be harmful rather than helpful to the respect and esteem that lawyers hold for the Kentucky Bar Association and the Supreme Court.

This Court has determined that Respondent failed to show cause to avoid suspension and imposition of a $500 penalty for an approximately two hour absence during a program spanning two days.[1] Although a new attorney has one year to complete the program, there are only two New Lawyer Skills Programs available in the span of one year. As an illustration, in calendar year 2006, the program will be offered on April 19–20 in Louisville and on October 3–4 in Lexington. Although many new lawyers in our Commonwealth live and work in one of these locations, many do not. Due to personal or work obligations, one may assume that some attorneys in Louisville or Lexington will be unable to attend the program in their city, and must opt to attend in the other city. Practically, this means that many of the attorneys who will attend the program in 2006 must secure lodging for one, if not two nights in order to meet the strict timelines set forth by the CLE Commission. Going rates vary, but one may imagine that a hotel bill will be $200 or more to attend this mandatory event. When other costs are considered, what is presented as a "free" event is something considerably more. Respondent's drive from Louisville to Covington is hardly unreasonable and is perfectly consistent with proper frugality.

The KBA exists to maintain the integrity of our profession and promote competence and professionalism among attorneys. While I do not advocate a lax attitude toward those who willfully violate Supreme Court CLE rules, this Court should not abandon its discretion to depart from CLE Commission recom-

---

1. In this Court's opinion and order, a majority has determined that "Cook has not shown cause why he should not be suspended from the practice of law or otherwise sanctioned. However, we adopt the CLE Commission's recommendation for sanctions in lieu of sus-

pension." I interpret this to mean that the majority believes that Respondent could be properly suspended but is showing mercy by imposition of a fine and other non-monetary sanctions.

mendations in appropriate circumstances. Respondent admitted his non-compliance in this matter and provided what appears to be an entirely reasonable explanation, "unforeseen car trouble." His response gives every indication of candor and his behavior exhibits no indication of dishonesty. An unforeseen event such as car trouble, causing two hours tardiness, should not create a permanent negative mark on what would be otherwise a blank record with the KBA.

This is not a situation in which an attorney scoffed at the program requirement. He appeared on the first day and was on his way from Louisville to Covington for the second day when car trouble struck. A determination that he deserves suspension and the imposition of a $500 fine seems grossly excessive.

GRAVES, J., joins this dissenting opinion.

GRAVES, Dissenting Justice.

I join Chief Justice Lambert's dissent; however, I write separately to suggest that the application of SCR 3.652 be revisited at this time. In this matter, and perhaps others, the rule is conceivably being applied selectively and unfairly.

Pertinent parts of the rule state as follows: "*Within twelve (12) months* following the date of admission as set forth on the certificate of admission, each person admitted to membership to the Kentucky Bar Association *shall complete* the New Lawyer Skills Program." SCR 3.652(5). "Failure to complete and certify attendance for the New Lawyer Skills Program pursuant to paragraphs (5) and (6) of this Rule *shall be grounds for suspension* from the practice of law in the Commonwealth *or other sanctions* as deemed appropriate by the Court." SCR 3.652(9). Finally, the rule only requires the CLE Commission to provide this program *once* each educational year. SCR 3.652(1).

The most striking and unusual aspect of this rule is that violation of the requirement is a strict liability infraction. It provides no leeway for first year attorneys who might have mitigating and extenuating circumstances on the day scheduled for the class. It is dubious whether persons could take refuge under SCR 3.667 which states "[t]he time requirements associated with completion of continuing legal education and certification thereof, as set forth in Rule 3.661(1) and (8), *may be extended by the Commission* in case of hardship or other good cause clearly warranting relief." Individuals facing insuperable circumstances arising on the day of the program are generally unable to apply for an extension prior to the time expiration. SCR 3.661(8) mandates that all extensions be received before the end of the twelve month period. In this case (and most, I presume), the twelve month period for completion of the program expired prior to the date when respondent was scheduled to complete the program.

Once time has actually expired, it is unclear whether the Commission could or would even accept an application for extension of time. And even if the Commission chooses to accept an untimely application, it would be left to the discretion of the Commission to determine whether the person was nonetheless worthy of the extension. The rule should be amended at this time to allow individuals such as the respondent to at least apply for an extension. Such an amendment would prevent the rule being applied in a mechanical and draconian manner.

No other requirement in the CLE rules is nearly as merciless as SCR 3.652. Attorneys who fail to complete any other CLE requirement for any reason whatsoever must simply "submit a plan for mak-

ing up his or her delinquency" and pay a filing fee of $250. SCR 3.667(2). I fail to understand why attending the New Lawyer Skills Program within one year of a person's admittance to the bar demands a stricter and less forgiving standard. We should not presume that new lawyers are ignorant of legal ethics and professional responsibility. Professional responsibility is in the modern law school curriculum, and the MPRE singles out legal ethics for separate testing. In many respects the program is duplicative of law school.

Indeed, it appears absolutely preposterous that such minor infractions are being submitted to this Court for our review. Peccadillos belong in the district court.

The purpose behind the New Lawyers Skills Program is not to snare hapless new lawyers with a covered snake pit, but rather it is to ensure that these attorneys attain the initial training which the Bar finds important. When such training is delayed due to unforeseeable circumstances, there is no reason to mar their professional careers with an ethics violation.

Such citations which must be disclosed on applications would impede, if not prevent, receiving a commission in the Judge Advocate General's Corps, and perhaps admission to the bar in other jurisdictions as well as surviving a judicial nomination commission. It could be perceived as a scarlet letter having the functional equivalent of a felony conviction remaining after a pardon from the governor.

Rather, noncompliant attorneys should be held to the same standards that all other attorneys in this Commonwealth (and most other states) are held to under the same or similar circumstances—a late fee and completion in a timely fashion. This is simple common sense. This Court's purpose is to ensure the quality standards of our profession, and punishing

the unlucky will do nothing to further that goal.

This case demonstrates that our treatment of new lawyers for CLE violations is analogous to the treatment of newly initiated fraternity members. Initially, new members are subject to overly strict rules of behavior. However, once we have determined that they have "paid their dues" so to speak, they become fully recognized members of the organization, always worthy of a second chance.

If strict compliance against all reason is necessary under SCR 3.652, then possibly 100 or more others should also be subject to sanctions and an ethics violation on their record. SCR 3.652(9) provides; "[n]inety (90) days prior to the end of the twelve (12) month period all individuals not certifying completion of the New Lawyer Skills Program shall be notified in writing that the program must be completed before the end of the twelve (12) month period, indicating the date [that the twelve (12) month period expires for each individual]." It is my understanding that the CLE Commission offered its second and final class for the October 2004 inductees on October 25, 2005. However, most of those inductees were sworn in at the formal induction ceremony held at the Capitol on October 15, 2004. As the second class was clearly held more than one year after the bulk of the October 2004 inductees were sworn in, each and every one of those inductees attending the October 25, 2005, class (over 100) is noncompliant and, under the strict liability standard utilized in this case currently before us, should be subject to sanctions and an ethics violation on their permanent record.

Such a clearly grotesque result is indicative of the truly unfair and harsh application of SCR 3.652 in this case. I would simply allow the respondent an extension

of time to complete the requirements of SCR 3.652. Another alternative would be to allow satisfaction of the requirement by testing on the subjects covered in the program.

LAMBERT, C.J., joins this dissenting opinion.